

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | SECRET INDICTMENT |
| ) | CASE NO.: 1:14CR028 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE |
| ) | |
| ANTWAIN HAMILTON, ) | Title 18, United States Code §§ 2, 1347, |
| TEMECA HAMILTON, and ) | 1512(b)(3) |
| STAR MEDICAL TRANSPORTATION, ) | |
| ) | |
| Defendants. ) | |

The Grand Jury charges:

## I. BACKGROUND

At all times material to this Indictment:

### Defendants

1.  Defendants ANTWAIN HAMILTON and TEMECA HAMILTON were the owners and only employees of Defendant STAR MEDICAL TRANSPORTATION (STAR), an ambulette company. The business address was 16004 Broadway Avenue, Maple Heights, Ohio 44137, within the Northern District of Ohio, Eastern Division.

2. Defendants ANTWAIN HAMILTON and TEMECA HAMILTON were in charge of scheduling and billing the transportation services provided by STAR. At times Defendants ANTWAIN HAMILTON and TEMECA HAMILTON also were drivers for STAR transporting Medicaid recipients.

## The Medicaid Program and Ambulettes

3. Medicaid provided medical insurance coverage for the poor under the Social Security Act (42 U.S.C. §1396 et seq.). Medicaid was administered in Ohio by the Ohio Department of Job and Family Services (ODJFS). Federal funds paid for 60% of Ohio Medicaid benefits; the State of Ohio funds the remainder. Ohio Medicaid was a federal health benefit program within the meaning of 18 U.S.C. §1347.

4. On or about December 28, 2006, ODJFS received a written Provider Application from STAR to become a Medicaid provider of ambulette transportation services in the State of Ohio. Defendant ANTWAIN HAMILTON signed the agreement as Owner of STAR. The agreement provided that STAR would bill Medicaid only for ambulette transportation that complied with federal and state laws. Provider Number XXXX359 was assigned to STAR.

5. On or about June 16, 2009, ODJFS received a written Provider Application from STAR to become a Medicaid provider of ambulette transportation services in the State of Ohio. Defendant ANTWAIN HAMILTON signed the agreement as Owner of STAR. The agreement provided that STAR would bill Medicaid only for ambulette transportation that complied with federal and state laws. Provider Number XXXX351 was assigned to STAR pursuant to the second application.

6. Ohio Administrative Code Chapter 5101, which governed ambulette transportation, provided that:

    a. An "ambulette" was a vehicle designed to transport individuals sitting in wheelchairs. It had, at a minimum, permanent fasteners to secure the wheelchair to the inside of the vehicle, rider restraints, a stable access ramp or hydraulic lift, company identification on both sides or the rear of the vehicle, and a ceiling-to-floor height of 56 inches.

    b. An "attending practitioner" was a licensed doctor of medicine, osteopathy or podiatry, or an advance practice nurse, who provided ongoing care and treatment to the transported individual and could certify that the person was non-ambulatory, had medical need for ambulette transport, and for how long.

    c. A "non-ambulatory" person had a permanently or temporarily disabling condition that precluded transportation in a vehicle not modified or created for transporting such a person.

    d. Ohio Medicaid reimbursed a provider for ambulette transportation only if:

        i. the recipient's attending practitioner certified that it was medically necessary,

        ii. the attending practitioner certified that the recipient was non-ambulatory, could be transported in a wheelchair, and did not need an ambulance,

        iii. the recipient was transported in a wheelchair,

3

        iv.    the vehicle used was an ambulette, and

        v.    transport was to or from a Medicaid covered service.

e.    The provider was required to keep documentation of compliance with conditions of reimbursement.

f.    The provider was required to obtain an Ambulette Certification of Medical Necessity (CMN) completed, dated and signed by the Medicaid recipient's attending practitioner. The CMN was required to state the medical condition that rendered the recipient non-ambulatory and certify that ambulette transport was medically necessary. The provider was required to obtain the CMN before claiming payment from Medicaid.

g.    If the attending practitioner certified that the recipient was temporarily non-ambulatory, the attending practitioner was required to certify how long ambulette transport is necessary. The CMN was then valid for that length of time. If the period exceeded 90 days the provider was required to obtain a new CMN.

h.    If the attending practitioner certified that the recipient was permanently non-ambulatory, the CMN was valid for one year from the first ambulette transport.

i.    The CMN was valid as long as the recipient remained non-ambulatory. If the provider noted a change in ambulatory status, it was required to obtain a new CMN from the attending practitioner. The CMN was non-transferable from one provider to another.

4

j. In addition to the CMN, the provider was required to maintain documentation of dates of service, times and addresses of pick up and drop off, the driver's and attendant's full names, the recipient's full name and Medicaid number, vehicle identification, the full name of the Medicaid-covered service provider, and mileage.

k. Transportation services were billed for the pick-up and drop-off of a Medicaid recipient, accompanying mileage, and for any additional appropriate and justified services, such as use of an extra attendant necessary for the transportation service. Each discrete service was designated a specific code by ODJFS. "A0130" was the code used to designate a basic transportation service, indicating the transportation service actually occurred. "S0209" was the code used to designate the mileage of the transportation service. "T2001" was the code used to designate a non-emergency transportation attendant/escort. These billing codes were well known to the medical community, providers, and health care insurance companies.

l. "Attendant" was defined in the Ohio Administrative Code as an individual employed by the transportation provider, who was separate and distinct from the basic crew of the transporting vehicle, and who met the qualifications specified in paragraph (B)(2) of Rule 5101:3-15-02 of the Ohio Administrative Code for ambulance, and paragraph (C)(3) of Rule 5101:3-15-02 of the Ohio Administrative Code for ambulette, and was

5

present to aid in the transfer of Medicaid patients who met the criteria for receipt of transportation services.

## II. THE FRAUDULENT SCHEME

7.  From on or about January 12, 2010, through on or about January 1, 2014, Defendants ANTWAIN HAMILTON, TEMECA HAMILTON, and STAR did devise and intend to devise a scheme and artifice to defraud ODJFS/Medicaid and to obtain money by means of false and fraudulent pretenses, representations and promises.

8.  It was a part of the scheme and artifice to defraud that Defendants ANTWAIN HAMILTON, TEMECA HAMILTON and STAR transported Medicaid recipients that did not require or use a wheelchair, although Defendants understood that Medicaid provided reimbursement for only those recipients who required the assistance of wheelchairs and were actually transported in wheelchairs.

9.  It was a further part of the scheme and artifice to defraud that Defendants ANTWAIN HAMILTON, TEMECA HAMILTON and STAR billed for transportation services that were never provided, including mileage and the services of an extra attendant using the T2001 attendant code when no attendant was used or required for the transportation.

10. It was a further part of the scheme and artifice to defraud that Defendants ANTWAIN HAMILTON, TEMECA HAMILTON and STAR billed for transportation services when ANTWAIN HAMILTON and TEMECA HAMILTON were traveling out of state and therefore services could not have been provided.

11. It was a further part of the scheme and artifice to defraud that by billing for services that were not provided as indicated on the billings submitted to ODJFS/Medicaid,

6

Defendants ANTWAIN HAMILTON, TEMECA HAMILTON, and STAR received over $750,000.00 to which they were not entitled.

## Counts 1 - 9
### (Health Care Fraud, 18 U.S.C. §1347)

The Grand Jury further charges:

12. The Grand Jury re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 11 of the Indictment as if fully set forth herein.

13. From on or about January 12, 2010, through on or about January 1, 2014, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants ANTWAIN HAMILTON, TEMECA HAMILTON and STAR knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud the Medicaid health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations and promises described herein, money and property owned by, and under the custody and control of, a health care benefit program, Ohio Medicaid, in connection with the delivery of and payment for health care benefits, items and services.

14. On or about the dates listed below, in the Northern District of Ohio and elsewhere, Defendants ANTWAIN HAMILTON, TEMECA HAMILTON, and STAR, having knowingly and willfully executed and attempted to execute the scheme and artifice to defraud the Ohio Medicaid program described above, and to obtain money, by means of the false and fraudulent pretenses, representations and promises described above, did execute and attempt to execute the scheme by submitting the claims for reimbursement set forth below:

7

| Count | Date of Service | Date of Claim | Amount of Claim | Health Care Benefit Program / Beneficiary |
|---|---|---|---|---|
| 1 | 02/01/10 | 02/17/10 | $97.40 | Medicaid / A. S. |
| 2 | 03/06/13 | 03/18/13 | $101.60 | Medicaid / L. D. |
| 3 | 09/16/11 | 09/30/11 | $100.20 | Medicaid / K. H. |
| 4 | 03/28/12 | 04/06/12 | $101.60 | Medicaid / T. P. |
| 5 | 01/15/13 | 01/18/13 | $206.00 | Medicaid / S. Q. |
| 6 | 01/15/13 | 01/18/13 | $208.80 | Medicaid / D. J. |
| 7 | 12/03/12 05 | 12/07/12 | $140.80 | Medicaid / E. A. |
| 8 | 12/03/12 05 | 12/07/12 | $101.60 | Medicaid/ L. D. |
| 9 | 08/23/13 | 09/20/13 | $101.60 | Medicaid/ S. Q. |

All in violation of Title 18, United States Code, Section 1347 and 2.

Count 10
(Witness Tampering, 18 U.S.C. § 1512(b)(3))

15. The Grand Jury re-alleges and incorporates by reference the allegations set forth in paragraphs 1 and 2 of the Indictment as if fully set forth herein.

16. On or about June 4, 2013, in the Northern District of Ohio, Eastern Division, Defendant TEMECA HAMILTON did knowingly attempt to corruptly persuade a Medicaid recipient, D.J., by asking D.J., in exchange for free transportation in the future, to tell law enforcement that STAR had transported D.J. for the previous five years, which was false, with the intent to hinder, delay, and prevent the communication to a law enforcement officer of

information relating to the commission of a federal offense, to wit: health care fraud in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1512(b)(3).

A TRUE BILL.

Original document -- Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.